UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FABIANO PINTO,

      Plaintiff,

v.                                Case No.: 2:19-cv-551-JLB-MRM

KEVIN RAMBOSK, MATTHEW
KINNEY, JOSHUA CAMPOLO,
ADAM DILLMAN, STEVE MAHOLTZ,
FRANK PISANO, JR., BECKI
THOMAN, JAY MULHOLLAND,
and JAMES BYERS,

      Defendants.
_____/

## **ORDER**

Plaintiff Fabiano Pinto gathered a group of twenty of his family and friends, boarded a party bus, and headed to a bar to celebrate his birthday.  Around midnight, the manager of a bar denied his group entrance because it was full.  Unpleasantries were thereafter exchanged between Mr. Pinto and the bar's manager, nearby law enforcement intervened, and what started as a birthday celebration, resulted in Mr. Pinto's arrest, a night in the local jail, this multi-count lawsuit, and most recently, the parties' motions and cross-motions for summary judgment.  After careful review of the parties' briefing and viewing the evidence in the light most favorable to Mr. Pinto, Defendants' motions for summary judgment are granted on all claims, Mr. Pinto's cross-motions for summary judgment are denied, and this Court therefore enters judgment in favor of Defendants.

## BACKGROUND

Mr. Pinto raises several federal and state law claims stemming from his arrest at the Mercato shopping center in Naples, Florida.[1]  (Doc. 119 at ¶¶ 1–4, 26.) Mercato contracts with the Collier County Sheriff's Office (CCSO) to station deputies at its property on the weekends to "show visibility" and "keep the peace."  (Doc. 145-5 at 1-2.)  At the time of Mr. Pinto's arrest, Kevin Rambosk was Sheriff of Collier County.  (Doc. 128-2 at ¶¶ 1, 4.)  The remaining defendants worked for the CCSO: Jay Mulholland was a lieutenant who oversaw a district that did not include Mercato (Doc. 154-2 at 5:13, 13:4–6, 28:21–24); Becki Thoman was a criminal research investigator whose duties included printing and submitting documents to the State Attorney's Office (Doc. 154-1 at 8:6–11:2); Deputy James Byers was a sergeant, and Mathew Kinney, Joshua Campolo, Adam Dillman, Steve Maholtz, and Frank Pisano were sheriff's deputies on the scene during Mr. Pinto's

---

[1] The parties' motions include a Statement of Material Facts as required by the Instructions Regarding a Statement of Material Facts for a Motion for Summary Judgment, found on the Court's webpage. See https://www.flmd.uscourts.gov/sites/flmd/files/judges/forms/flmd-badalamenti-instructions-regarding-a-statement-of-material-facts-for-a-motion-for-summary-judgment.pdf.  Those Instructions direct the moving party on summary judgment to "list each material fact alleged not to be disputed," and to support each such fact "by a pinpoint citation to the specific part of the record relied upon to" show no genuine dispute exists as to that fact.  Id. Many of the parties' pinpoint citations to the purportedly "undisputed" facts refer the Court to surveillance and cellphone video footage.  The Court has reviewed those recordings, however, and finds that many of the asserted "undisputed" facts are contradicted, or at a minimum unsupported, by those video recordings.  The Court need not credit a version of the facts that "is blatantly contradicted by the record, so that no reasonable jury could believe it."  Scott v. Harris, 550 U.S. 372, 380 (2007).  To the extent the parties' statements present a factual dispute, the facts are viewed in a light most favorable to Mr. Pinto, the non-moving party.

arrest (Doc. 152-3 at 42:12–13; Doc. 152-4 at 12:1–14:24; Doc. 152-5 at 73:4–19; Doc. 152-6 at 11:10–12:2; Doc. 152-8 at 25:17–20; Doc. 152-9 at 5:12–18, 8:1–3, 19:6–20:3).

On December 16, 2017, Mr. Pinto and several of his family and friends boarded a party bus to celebrate his birthday.  (Doc. 145-2 at 8:13–17.)  The group arrived at Mercato around midnight.  (Id. at 23:19–23.)  Some of those individuals entered a nearby bar while others, including Mr. Pinto, made plans to instead visit another bar at Mercato, Cavo Lounge.  (Id. at 19:1–7, 23:24–24:4.)  The group eventually reconvened and walked to Cavo Lounge, which had a line of people awaiting entrance at its roped-off entrance.  (Id. at 26:18–27:22, 37:7–11.)  Mr. Pinto approached the entrance and asked the manager, Jason Buro, whether there was capacity for "about 20 people."  (Id. at 27:23–24.)  Mr. Buro replied that the bar was full, and they could not enter it.  (Id. at 27:18–22, 28:4–9.)

Mr. Pinto noticed his sister and several people enter Cavo Lounge from the side.  (Id. at 28:4–9.)  He called his sister's name and waved his right hand to get her attention.  (Id. at 28:22–29:4.)  Mr. Buro walked over and "smacked down" Mr. Pinto's arm.  (Id. at 29:2–4, 33:21–25.)  Mr. Pinto said, "What the [f*ck] was that about? What did you do that for?"  (Id. at 30:7–11.)  Mr. Buro told Mr. Pinto he "was waving too close to him and [Mr. Pinto] was getting too close to [Mr. Buro's] face," and to "[g]et the 'F' out of here."[2]  (Id. at 29:13–23, 61:21–25.)  Mr. Pinto apologized and explained to Mr. Buro that he was "trying to call [his] sister."  (Id. at 29:19–20.)

_____

[2] Although Mr. Pinto and Deputy Kinney both testified that they heard Mr.

At the time, Deputy Kinney was on special detail at Mercato and standing about 10 to 15 feet away from Messrs. Pinto and Buro. (Doc. 145-4 at 32:18–21, 49:21–50:2, 61:4–62:4.) Deputy Kinney observed the altercation, approached, and, according to Mr. Pinto, immediately pushed him as he was turning to leave.[3] (Id. at 88:1–10; Doc. 145-2 at 39:12–25; Doc. 159-1 at 88:5–11.) Specifically, Mr. Pinto testified that Deputy Kinney pushed Mr. Pinto on his shoulder or "back area" from the ropes surrounding Cavo Lounge's entrance. (Doc. 145-2 at 37:18–25, 39:13–16.) Mr. Pinto moved back "probably two feet, two and a half, two feet," but did not fall to the ground, leave his feet, or sustain any physical injury. (Id. at 43:3–14, 63:3–64:25.) To maintain his balance, Mr. Pinto extended his right arm, and the front of his hand made contact with Mr. Kinney's chest. (Id. at 43:6–14, 45:8–22.) Mr. Pinto "knew [he] wasn't touching regular clothes," looked at Deputy Kinney, who was wearing a uniform marked "sheriff," and realized that Deputy Kinney was a law enforcement officer. (Id. at 46:8–24, 49:7–50:6; Doc. 145-6 at 17:2–3.)

Deputy Kinney grabbed Mr. Pinto's left arm, "rushed towards" him, and placed Mr. Pinto's left arm behind his back. (Doc. 145-2 at 52:12–17.) Mr. Pinto put his right hand in the air "because [he] was very confused as to why [he] was getting

---

Buro tell Mr. Pinto to leave, Mr. Buro testified, "I don't believe I asked him to leave. I was done with him, but I don't ask him to leave." (Doc. 159-1 at 76:4–6; Doc. 145-2 at 35:21–23; Doc. 145-4 at 63:1–19.) To the extent this constitutes a factual dispute, the dispute is immaterial to the resolution of the parties' motions.

[3] Deputy Kinney testified that he also told Mr. Pinto to leave. (Doc. 145-4 at 85:15–86:6.) Any such factual dispute is likewise immaterial to the resolution of the parties' motions.

placed in handcuffs as [he] was being arrested." (Id. at 52:18–23.)  Deputy
Campolo, who was also assigned to Mercato and standing about 20 to 25 feet from
Mr. Pinto and Deputy Kinney, approached to assist Deputy Kinney.  (Doc. 152-6 at
12:1–4, 26:5–27:4, 28:8–14.)  Deputy Campolo grabbed Mr. Pinto's right arm and
pulled it behind his back to handcuff Mr. Pinto.  (Id. at 31:13–19, 33:10–13, 34:5–20;
Doc. 145-2 at 108:8–10.)

    Deputies Pisano, Dillman, Maholtz, and Byers were also working at Mercato
that night.  Deputy Pisano noticed a commotion at Cavo Lounge, approached, and
observed Deputy Kinney "trying to push somebody away" and people "pushing
back." (Doc. 152-4 at 14:20–15:3, 20:11–23.)  Deputy Pisano attempted to control
the crowd.  (Doc. 152-7.)  Similarly, Deputy Dillman observed Deputy Kinney
attempting to take Mr. Pinto into custody and focused on controlling the
crowd.  (Doc. 152-5 at 71:7–13.)  Deputy Maholtz was drawn to a security guard at
Cavo Lounge who flashed a light in his direction, indicating a potential
problem.  (Doc. 152-8 at 38:7–15.)  He observed Mr. Pinto's hand make contact with
Deputy Kinney's chest.  (Id. at 41:5–12.)  As Deputy Kinney was handcuffing Mr.
Pinto, Deputy Maholtz turned his back to them and focused on controlling the
crowd.  (Id. at 43:1–44:7.)  Last, Deputy Byers noticed a commotion about 30 feet
from where he stood and headed toward it.  (Doc. 152-9 at 25:21–26:18.)  Deputy
Byers observed Deputy Kinney attempting to handcuff Mr. Pinto and asked if
Deputy Kinney was placing Mr. Pinto under arrest.  (Id. at 21:18–24, 25:21–24.)
Deputy Kinney responded in the affirmative, but Deputy Byers was not told why

Mr. Pinto was placed under arrest.  (Id. at 21:24–22:7.)  Deputy Byers assisted the deputies in attempting to control the crowd.  (Id. at 30:15–31:22.)

After Mr. Pinto was handcuffed, Deputies Kinney and Campolo escorted him to the parking garage where a patrol car was stationed.  (Doc. 145-2 at 67:7–68:10; Doc. 145-4 at 98:16–25.)  Deputies Kinney and Campolo held Mr. Pinto's arms while walking, and Mr. Pinto's "arm was just kind of pushed up a little bit too far, further than [he] could put [his] shoulders."[4]  (Doc. 145-2 at 64:17–22, 73:9–12.)

Several people from Mr. Pinto's group followed Mr. Pinto and the deputies to the patrol car.  (Doc. 145-2 at 68:7–10, 71:10–25.)  Mr. Pinto was searched outside the patrol car.  (Doc. 145-4 at 99:21–100:18.)  While standing against the car, Mr. Pinto said, "I am not resisting. I am not resisting at all."  (Def. Kinney's Mot. Summ. J., Ex. H, Cellphone Video at 0:43-0:47.)  He then turned to Deputy Kinney and said, "What the [f*ck] are you doing?"  (Id. at 0:53-0:58; Doc. 145-2 at 82:14–18.)  Deputy Kinney used his hand to push Mr. Pinto's face back toward the patrol car.[5]  (Cellphone Video at 0:58-1:11.)  Deputy Kinney released Mr. Pinto and walked to the front of the car.  (Id. at 1:11-1:20.)  The deputies remaining at the patrol car

---

[4] Mr. Pinto testified that this act "re-aggravated" a prior shoulder injury, and about "six months after," Mr. Pinto made one visit to a doctor whose name he did not remember. (Doc. 145-2 at 73:13–76:18.)

[5] Deputy Kinney argues that he "used his hand on Mr. Pinto's face to maneuver him away from the car so the door could be opened."  (Doc. 145 at 7.)  However, Deputy Kinney cites no record evidence supporting that this was indeed his intent.

assisted in placing Mr. Pinto in the backseat, and Deputy Campolo drove him to "to the Naples Jail." (Id. at 1:24-1:33; Doc. 152-6 at 41:22–42:2.)

After Deputy Campolo drove Pinto to the Naples jail, Deputy Kinney told Deputy Campolo that Mr. Pinto had struck him. (Doc. 152-6 at 34:21–35:13.) Deputy Kinney completed the booking sheet, which listed three charges against Mr. Pinto: battery on a law enforcement officer (Fla. Stat. § 784.07); resisting a law enforcement officer without violence (Fla. Stat. § 843.02); and disorderly intoxication (Fla. Stat. § 856.011). (Doc. 145-11; Doc. 145-4 at 108:9–22.) Ms. Thoman "printed out the documentation for the case and put it in order and sent it" to the State Attorney's Office. (Doc. 154-1 at 13:9–14.) Less than a day after his arrest, Mr. Pinto was released on bond with no additional conditions. (Doc. 145-2 at 95:2–10, 96:14–18; Doc. 145-12.) On October 4, 2018, the State Attorney's Office dismissed all of Mr. Pinto's criminal charges. (Doc. 119 ¶¶ 2, 110.) He subsequently filed this lawsuit. (Doc. 1.)

The following sixteen claims are before this Court: First Amendment retaliation under 42 U.S.C. § 1983 against Deputy Kinney in his individual capacity; false arrest and false imprisonment under Florida law against Deputies Kinney and Campolo in their individual capacities and Sheriff Rambosk in his official capacity, and under section 1983 against Deputies Kinney and Campolo in their individual capacities; assault and battery under Florida law against Deputies Kinney and Campolo in their individual capacities and Sheriff Rambosk in his official capacity; excessive force under section 1983 against Deputies Kinney and

Campolo in their individual capacities; malicious prosecution under Florida law and section 1983 against all Defendants in their individual capacities; abuse of process under Florida law against all Defendants in their individual capacities and under section 1983 against all Defendants, except Ms. Thoman, in their individual capacities and against Sheriff Rambosk in his official capacity; deprivation of rights and denial of equal protection under Florida law (Fla. Stat. §§ 760.07 and 760.08) against "CCSO Defendants" in their individual capacities and Sheriff Rambosk in his official capacity; deprivation of rights and denial of equal protection under 42 U.S.C. §§ 1981 and 1983 against all Defendants, except Ms. Thoman, in their individual capacities; conspiracy to interfere with civil rights under 42 U.S.C. §§ 1983 and 1985 against all Defendants in their individual capacities; and failure to intervene under section 1983 against all Defendants, except Sheriff Rambosk, in their individual capacities.[6]   (Doc. 119.)

All Defendants move for summary judgment, contending that Pinto's claims are without merit, and that they are entitled to qualified immunity and protection under section 768.28, Florida Statutes.  (Docs. 145, 152, 153, 154.)  Mr. Pinto has filed responses in opposition and cross-motions for summary judgment.[7]  (Docs. 159, 160, 161.)

_____

[6] Upon a Joint Stipulation of Dismissal with Prejudice, Defendants SLR Naples Corp., Tallides, and Buro were previously terminated from this case.  (Docs. 150, 151.)

[7] Mr. Pinto did not file a cross-motion for summary judgment or response in opposition as to Lieutenant Mulholland and Ms. Thoman.  (Doc. 154.)  Additionally, as the remaining defendants observe, Mr. Pinto did not respond to their motions for

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If this showing is made, "the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial." Shaw v. City of Selma, 884 F.3d 1093, 1098 (11th Cir. 2018) (internal quotation marks and citation omitted).

"A fact is 'material' if it has the potential of 'affect[ing] the outcome of the case.'" Id. (citation omitted). "And to raise a 'genuine' dispute, the nonmoving party must point to enough evidence that 'a reasonable jury could return a verdict for

---

summary judgment as to the eleventh through sixteenth causes of action. (Doc. 163 at 2; Doc. 165 at 2; Doc. 166 at 2.) As a result, the claims are deemed abandoned, but will nonetheless be addressed. See Edmondson v. Bd. of Trs. of Univ. of Ala., 258 F. App'x 250, 253 (11th Cir. 2007) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); Richards v. Cobb Cnty., 487 F. App'x 556, 557 n.1 (11th Cir. 2012) ("[Plaintiff] also alleged a claim for malicious prosecution . . . but he then abandoned that claim by failing to argue it in response to the [defendant's] motion for summary judgment . . . .").

Also pending is Mr. Pinto's Motion for Extension of Time, in which he seeks a "one (1) day extension of time, nunc pro tunc, from March 1, 2021, to March 2, 2021, regarding the filing deadline for [his] responses and cross-motions for summary judgment . . . , or, in the alternative, for an order deeming said submissions timely, as filed." (Doc. 162 at 1.) In their response, Sheriff Rambosk and Deputies Byers, Campolo, Dillman, Maholtz, and Pisano note that while they "do not oppose the relief sought in the motion and defer to the Court as to whether [Mr. Pinto] has met his burden of demonstrating excusable neglect justifying his request," they do oppose the request "to the extent it . . . would penalize the Defendants of a day to respond to [his] latest filings through no fault of their own." (Doc. 164 at 3.) In any event, Defendants have filed their responses in opposition and replies, and Mr. Pinto has made an adequate showing of excusable neglect. The motion is accordingly due to be granted.

[him].'"  Id. (citation omitted).  "When considering the record on summary judgment 'the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'"  Id. (citation omitted).

## DISCUSSION

Summary judgment in Defendants' favor is warranted as to all claims.  The claims will be addressed sequentially, as pleaded in Mr. Pinto's complaint.

**First Cause of Action: First Amendment Retaliation Under Section 1983 Against Deputy Kinney in His Individual Capacity**

In his First Amendment retaliation claim, Mr. Pinto alleges that his "speech and acts were Constitutionally protected, as [he] was merely expressing his opinion regarding . . . Buro's conduct," and that Deputy "Kinney intervened and prevented [him] from exercising his right to engage in protected speech and acts by physically attacking and arresting [him]."  (Doc. 119 ¶¶ 128–29.)  Mr. Pinto further alleges that Kinney attacked and arrested him because Deputy Kinney "disagreed with [Pinto's] opinion of . . . Buro's behavior."  (Id. ¶ 130.)

A claim under section 1983 requires a plaintiff to prove that: (1) the defendant's conduct violated a constitutional right; and (2) the challenged conduct was committed "under the color of state law."  Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (citations omitted).  As Deputy Kinney correctly contends, Mr. Pinto has not shown that he violated a constitutional right.  (Doc. 145 at 17-19.) And even if Deputy Kinney did violate a constitutional right, he is entitled to qualified immunity on this claim.  See Phillips v. Irvin, 222 F. App'x 928, 929 (11th Cir. 2007) (applying qualified immunity in First Amendment retaliation context).

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "[T]o receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citation omitted).  If proven, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Id. (citation omitted).  The plaintiff must demonstrate that the facts viewed in a light most favorable to him establish a constitutional violation and that the right violated was "clearly established" at the time of the incident.  Id. (citations omitted); Pearson v. Callahan, 555 U.S. 223, 236 (2009) (noting that either prong may be addressed first).  Here, Deputy Kinney was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred, and Mr. Pinto has not shown that Deputy Kinney violated his First Amendment rights or that any right violated was clearly established at the time of the incident.

To begin with, Deputy Kinney was acting within the scope of his discretionary authority as a sheriff's deputy.  Mr. Pinto reasons that Deputy Kinney was not acting within the scope of his discretionary authority because he committed battery and exceeded the scope of his orders to "show visibility and to keep the peace."  (Doc. 159 at 17.)  However, Mr. Pinto's allegations that Deputy Kinney's

11

conduct was unlawful are irrelevant.  Rather, "to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, <u>but for</u> the alleged constitutional infirmity, would have fallen with his legitimate job description."  <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252, 1266 (11th Cir. 2004) (emphasis in original); <u>see also</u> <u>Harbert Int'l, Inc. v. James</u>, 157 F.3d 1271, 1282 (11th Cir. 1998) ("[A] court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.").  At the time of the arrest, Deputy Kinney was employed by the CCSO, which had contracted with Mercato to station deputies at its property to "show visibility" and "keep the peace."  (Doc. 145-5.)  Further, Deputy Kinney was wearing a uniform which identified him as a sheriff's deputy and, but for the alleged constitutional infirmity, his intervention in the altercation between Messrs. Buro and Pinto would have fallen within his legitimate job description.  <u>See, e.g.</u>, <u>White v. City of Birmingham</u>, 96 F. Supp. 3d 1260, 1286 (N.D. Ala. 2015) (finding that security detail constituted discretionary duty).

Second, Mr. Pinto has not shown that the facts, which the Court views in the light most favorable to him at this stage of litigation, establish a constitutional violation.  To prevail on his First Amendment retaliation claim, Mr. Pinto must establish that: (1) he was engaged in constitutionally protected speech; (2) Deputy Kinney's retaliatory conduct adversely affected the protected speech, meaning that it "would likely deter a person of ordinary firmness from the exercise of First

Amendment rights"; and (3) a causal connection exists between the retaliatory conduct and the adverse effect on Mr. Pinto's speech.  DeMartini v. Town of Gulf Stream, 942 F.3d 1277, 1289 & n.8 (11th Cir. 2019) (citations omitted).  Generally, the presence of probable cause defeats a First Amendment retaliation claim premised on an arrest and criminal prosecution.  Id. at 1289 n.9, 1296 (citations omitted).  Here, Mr. Pinto has not shown that he was engaged in constitutionally protected speech, that Deputy Kinney's actions adversely affected his rights, that a retaliatory animus was the cause of any adverse action, or that his subsequent arrest and prosecution were unsupported by probable cause.

As to whether the speech was protected, although Mr. Pinto asserts that "Kinney arrested him without probable cause in retaliation for the impudence displayed by Mr. Pinto in daring to hold . . . Buro accountable for his misconduct" (Doc. 159 at 19), Mr. Pinto cites no authority in support of the proposition that the expression of his negative opinion of Mr. Buro while on Mercato's private property was constitutionally protected speech.[8] See, e.g., Billman v. Corbett, No. CIV.A. 10-2996, 2011 WL 605814, at *4 (E.D. Pa. Feb. 15, 2011) (rejecting First Amendment retaliation claim because plaintiff's speech took place on private property).  The

---

[8] Deputy Kinney contends that he intervened only after Mr. Buro told Mr. Pinto to leave, which could be relevant to the issue of whether Mr. Pinto's speech was protected.  (Doc. 145 at 18.)  However, although Deputy Kinney and Mr. Pinto testified that Mr. Buro told Mr. Pinto to leave, Mr. Buro testified, "I don't believe I asked him to leave. I was done with him, but I don't ask him to leave."  (Doc. 159-1 at 76:4–6; Doc. 145-2 at 35:21–23; Doc. 145-4 at 63:1–19.)  In any event, Mr. Pinto has not established a constitutional violation, even if Mr. Buro did not tell him to leave or Kinney did not hear Mr. Buro tell Mr. Pinto to leave.

failure to cite authority supporting Mr. Pinto's claim of constitutionally protected speech does not surprise the Court.  Fact be told, there is no constitutional right to exchange unpleasantries on another's private property.  Even if Mr. Pinto's speech was somehow protected, he has not shown that Deputy Kinney's purported retaliatory animus caused his subsequent injury, or in other words, that any retaliatory animus was a "but-for" cause of Deputy Kinney's actions.  Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019) (citing Hartman v. Moore, 547 U.S. 250, 256 (2006)).  For example, at the time of the dispute between Messrs. Buro and Pinto, Deputy Kinney was standing 10 to 15 feet away, and he testified he did not hear what Mr. Pinto said to Mr. Buro.  (Doc. 145-4 at 63:17–24; Doc. 145-2 at 37:21–25.) And Mr. Pinto has not identified similarly situated individuals who were not engaged in the same sort of protected speech and were not arrested.  See Nieves, 139 S. Ct. at 1727.

Moreover, as discussed below, there was arguable probable cause—and actual probable cause—for Mr. Pinto's arrest.  Assuming that Deputy Kinney adversely affected Mr. Pinto's speech upon handcuffing and arresting him, the relevant retaliatory conduct occurred after Mr. Pinto's hand made contact with Deputy Kinney's chest, thereby providing probable cause for at least an arrest for battery.[9]  Accordingly, Mr. Pinto has not established a constitutional violation. See

---

[9] To the extent Mr. Pinto contends Deputy Kinney violated his First Amendment rights when Deputy Kinney initially pushed him, prior to the existence of probable cause, the claim suffers an additional defect.  Namely, Mr. Pinto cites no authority in support of the proposition that such conduct by itself, unlike a false arrest or criminal prosecution, can support a First Amendment retaliation claim.

DeMartini, 942 F.3d at 1292 ("[I]f there is probable cause for the underlying criminal prosecution, then the § 1983 First Amendment retaliatory criminal prosecution case ends as a matter of law . . . ." (citing Hartman, 547 U.S. at 265–66)); see also Redd v. City of Enter., 140 F.3d 1378, 1384 (11th Cir. 1998) ("[W]hen an officer has arguable probable cause to believe that a person is committing a particular public offense, he is entitled to qualified immunity from suit, even if the offender may be speaking at the time that he is arrested.").[10]

Even if Mr. Pinto's retaliation claim has merit, he has not shown that Deputy Kinney violated a clearly established First Amendment right.  "For the law to be clearly established, case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law."  Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000) (citation omitted).  Decisions of the Supreme Court of the United States, the United States Court of Appeals for the Eleventh Circuit, and the Florida Supreme Court can

Nor has he shown that the purported retaliatory conduct adversely affected his rights.  Indeed, even following the push, Mr. Pinto continued to express his dissatisfaction with the situation.  And the push would not likely deter a person of ordinary firmness from the exercise of First Amendment rights, especially since Mr. Pinto was unaware that the individual pushing him was a sheriff's deputy.  (Doc. 145-2 at 40:19–21); see also Bethel v. Town of Loxley, 221 F. App'x 812, 813 (11th Cir. 2006) (noting that more than a "de minimis inconvenience" to exercise of First Amendment rights is required).

[10] To the extent necessary, this Court finds that Mr. Pinto has not established that additional "unique" considerations, such as the circumstances in Lozman v. City of Riviera Beach, 138 S. Ct. 1945 (2018), save his First Amendment retaliation claim, despite the presence of probable cause.

15

clearly establish the law in Florida's federal courts.  McClish v. Nugent, 483 F.3d

1231, 1237 (11th Cir. 2007) (citation omitted).  A right may also be clearly

established where the case is one of "obvious clarity."  Vinyard, 311 F.3d at 1350.

Mr. Pinto has failed to identify relevant caselaw which clearly established his

First Amendment right to express his negative opinion of Mr. Buro while on

Mercato's private property and to be free from arrest, despite the presence of

probable cause.  Reichle v. Howards, 566 U.S. 658, 664–65 (2012) ("This Court has

never recognized a First Amendment right to be free from a retaliatory arrest that

is supported by probable cause . . . .").  Nor has he shown that the matter is one of

"obvious clarity."  Accordingly, Deputy Kinney is entitled to qualified immunity.

In summary, Mr. Pinto has not established a genuine issue of material fact,

and summary judgment in Deputy Kinney's favor is warranted on this claim.

**Second Cause of Action: False Arrest Under Florida Law Against Deputies
Kinney and Campolo in Their Individual Capacities and Sheriff Rambosk
in his Official Capacity**

In his Florida false arrest claim, Mr. Pinto alleges that Deputies Kinney and

Campolo "unlawfully restrained [him] without legal authority and against his will

by twisting his arms behind his back, handcuffing him and confining him to a jail

cell."[11]  (Doc. 119 ¶ 136.)  In Florida, false arrest has "three elements: (1) an

unlawful detention and de[p]rivation of liberty against the plaintiff's will; (2) an

---

[11] As to the claim against Sheriff Rambosk, a claim against a sheriff or
deputy in his official capacity is effectively an action against the governmental
entity which he represents or of which he is an agent.  Busby v. City of Orlando, 931
F.2d 764, 776 (11th Cir. 1991); Cook ex rel. Est. of Tessier v. Sheriff of Monroe
Cnty., 402 F.3d 1092, 1115 (11th Cir. 2005).

unreasonable detention which is not warranted by the circumstances[;] and (3) an intentional detention." <u>Deegan v. City of Homestead</u>, No. 16-22820-CIV, 2017 WL 11497366, at *7 (S.D. Fla. Feb. 10, 2017) (citations omitted).  The presence of probable cause is a "complete bar" to the claim.  <u>Bolanos v. Metro. Dade Cnty.</u>, 677 So. 2d 1005, 1005 (Fla. 3d DCA 1996).  Here, Mr. Pinto's false arrest claim fails because there was probable cause for his arrest.

The standard for determining the existence of probable cause is the same under Florida and federal law.  <u>Rankin v. Evans</u>, 133 F.3d 1425, 1433 (11th Cir. 1998).  The question is whether the facts and circumstances within the deputy's knowledge "warrant a reasonable belief that the suspect had committed or was committing a crime."  <u>Case v. Eslinger</u>, 555 F.3d 1317, 1327 (11th Cir. 2009) (citation omitted).  This "is not a high bar," <u>Paez v. Mulvey</u>, 915 F.3d 1276, 1286 (11th Cir. 2019) (citation omitted), and "requires only a probability . . . of criminal activity, not an actual showing of such activity," <u>Case</u>, 555 F.3d at 1327 (citation omitted).  Further, "[s]o long as the circumstances known to the officers, viewed objectively, give probable cause to arrest for any crime, the arrest is constitutionally valid even if probable cause was lacking as to some offenses, or even all announced charges." <u>Elmore v. Fulton Cnty. School Dist.</u>, 605 F. App'x 906, 914 (11th Cir. 2015).

As noted, Mr. Pinto alleges that Deputies Kinney and Campolo unlawfully detained him by twisting his arms behind his back and arresting him.[12]  (Doc. 119 ¶ 136.)  However, immediately prior to his detention, Mr. Pinto's hand made contact with Deputy Kinney's chest. Moreover, Deputy Kinney was wearing a uniform with "sheriff" displayed on the chest.  (Doc. 145-2 at 49:18–25.)  This act created probable cause to arrest Mr. Pinto for at least battery or battery on a law enforcement officer, which requires that "(1) the defendant intentionally touched or struck the victim or intentionally caused bodily harm to the victim; (2) the victim was a law enforcement officer; (3) the defendant knew that the victim was a law enforcement officer; and (4) the law enforcement officer was engaged in the lawful performance of his or her duties when the battery was committed."  State v. Granner, 661 So. 2d 89, 90 (Fla. 5th DCA 1995).  The touching is "satisfied by any physical contact, no matter how slight."  United States v. Vail-Bailon, 868 F.3d 1293, 1305 (11th Cir. 2017) (internal quotation marks and citation omitted); see, e.g., Miller v. State, 636 So. 2d 144, 150

---

[12] To the extent Mr. Pinto contends that Deputy Kinney detained him when Deputy Kinney initially pushed him, the push did not constitute detention under the Fourth Amendment or Florida law and was, in any event, not unreasonable or unwarranted in the circumstances. See Clark v. Edmunds, 513 F.3d 1219, 1222 (10th Cir. 2008) (finding that a push did not constitute seizure); McDonough v. Mata, No. 19-21986-CIV, 2020 WL 7350267, at *10 (S.D. Fla. Sept. 28, 2020) (same); see also Brendlin v. California, 551 U.S. 249, 254 (2007) (noting that a seizure occurs "when the officer, by means of physical force or show of authority, terminates or restrains [a person's] freedom of movement, through means intentionally applied" (internal quotation marks, citations, and emphasis omitted)). Indeed, Mr. Pinto has not shown that Deputy Kinney's use of force objectively manifested an "intent to restrain." Torres v. Madrid, 141 S. Ct. 989, 998 (2021). Further, at the time of the push, Mr. Pinto was unaware that Deputy Kinney was law enforcement.  (Doc. 145-2 at 40:19–21.)

(Fla. 1st DCA 1994) (finding evidence that defendant "bumped against [the officer] with the side of his body" sufficient).

Mr. Pinto's arguments that he was unaware that Deputy Kinney was law enforcement at the time of the contact and that Deputy Kinney believed the contact was "involuntary or reactive, as opposed to deliberate" are unavailing.[13]  (Doc. 119 ¶¶ 38, 80.)  Rather, an arresting deputy is not required to "have specific evidence of the subjective intent and knowledge of a subject beyond the subject's conduct that otherwise gives rise to probable cause to arrest."  Gates v. Khokhar, 884 F.3d 1290, 1300 (11th Cir. 2018).  And "[a] particular [deputy]'s state of mind is simply 'irrelevant,' and it provides no basis for invalidating an arrest."  Nieves, 139 S. Ct at 1725 (citation omitted).

Nor does Deputy Kinney's initial push of Mr. Pinto negate the existence of probable cause supporting Mr. Pinto's arrest.  (Doc. 119 ¶ 37.)  Indeed, "[a] person is not entitled to use physical force to contest even an illegal arrest."  State v. A.R.R.,

---

[13] Mr. Pinto asks this Court to apply the "sham affidavit" doctrine to Deputy Kinney's testimony concerning Mr. Pinto's state of mind during the contact.  (Doc. 159 at 15-16); see Van T. Junkins and Assoc., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").  The doctrine, however, is inapplicable. See Baysa v. Gualtieri, 786 F. App'x 941, 946 (11th Cir. 2019) ("We have seen no instance in which a litigant's testimony from another judicial proceeding was contradicted by later deposition testimony and the later was subsequently disregarded . . . .").  In any event, there is no contradiction between Kinney's deposition testimony in Mr. Pinto's criminal proceeding and this civil action that warrants the doctrine's application.  Compare (Doc. 159-5 at 7:7–22), with (Doc. 145-4 at 153:23–156:17).

113 So. 3d 942, 945 (Fla. 5th DCA 2013); see also S.D. v. State, 11 So. 3d 401, 403 (Fla. 3d DCA 2009) (upholding battery conviction where officer intervened in a physical confrontation between customers at a market).[14]

As to the claim against Deputy Campolo, he intervened after observing Deputy Kinney attempt to take Mr. Pinto into custody. (Doc. 152-6 at 27:11–29:15.) As such, it would have been reasonable for him to assume there were valid reasons to effect an arrest. See Williams v. Miami-Dade Police Dep't, 297 F. App'x 941, 946 (11th Cir. 2008) (noting that "Florida's 'fellow officer rule' states that, when an arresting officer was absent for a significant portion of events giving rise to probable cause, the arresting officer may rely upon his fellow officer's judgment about probable cause"). Further, it is undisputed that Mr. Pinto raised his arm while Deputy Kinney attempted to apply handcuffs. (Doc. 145-2 at 52:18–23.) Notwithstanding Mr. Pinto's testimony that he raised his hand because he was "confused," his act of pulling away created probable cause that he also committed

_____

[14] Mr. Pinto also reasons that because he had not violated a law before Deputy Kinney pushed him, Deputy Kinney "was not engaged in his lawful duties at the time of the alleged offensive physical contact, thus precluding any probable cause to arrest Mr. Pinto for Battery on a Law Enforcement Officer." (Doc. 159 at 14.) However, as noted, Deputy Kinney was employed by the CCSO and on special detail at Mercato. In Florida, sheriff's deputies are conservators of the peace, Fla. Stat. § 30.15, and their duties include "protect[ing] people and property . . . under a variety of circumstances." A.R.R., 113 So. 3d at 945. Accordingly, in certain circumstances, deputies may use force absent probable cause. See A.R.R., 113 So. 3d at 943-44 (holding that evidence supported finding that deputy "was in the lawful performance of a legal duty" when he grabbed defendant's arm during argument with her mother, and defendant, who resisted, was charged with battery on a law enforcement officer).

resisting arrest.  <u>Savage v. State</u>, 494 So. 2d 274, 277 (Fla. 2d DCA 1986) ("One can resist, obstruct, or oppose an officer without committing a battery, for example, a person might struggle with an officer or refuse to present one's hands for handcuffing . . . .").[15]

Even if the deputies lacked probable cause to arrest Mr. Pinto, Florida's waiver of sovereign immunity statute, section 768.28, Florida Statutes, shields Deputies Kinney and Campolo from liability in their individual capacities.  Suits may proceed against a state employee only if he: (i) acted outside the course and scope of his employment; or (ii) committed a tort "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  Fla. Stat. § 768.28(9)(a); <u>Ullman v. Fla. Dep't of Corr.</u>, No. 5:17-cv-66-Oc-30PRL, 2017 WL 2103392, at *2 (M.D. Fla. May 15, 2017).  The second prong contemplates conduct that is "worse than gross negligence."  <u>Sierra v. Associated Marine Insts., Inc.</u>, 850 So. 2d 582, 593 (Fla. 2d DCA 2003) (citations omitted).  Courts have found that the absence of probable cause is insufficient to satisfy the standard.  <u>See, e.g.</u>, <u>Caldwell v. Nocco</u>, No. 8:14-cv-2167-T-30AEP, 2015 WL 9302835, at *5 (M.D. Fla. Dec. 22, 2015).

---

[15] Mr. Pinto's actions, coupled with his presence at a nightlife district with a large group of family and friends, some of whom were observed to be intoxicated, would also give rise to probable cause as to the third charged offense, disorderly intoxication.  <u>See, e.g.</u>, <u>Cross v. State</u>, 374 So. 2d 519, 520-21 (Fla. 1979) (finding evidence sufficient where defendant, at 2:30 a.m., was standing on a sidewalk in a commercial district, "peering" into a bag, threw the bag at an officer, and "loudly and profanely abuse[d] the officer"); (Doc. 145-4 at 65:20–66:19).

At best, Mr. Pinto has established that Deputies Kinney and Campolo were negligent in arresting him without lawful authority, which does not satisfy the requirements for the advancement of a claim over the sovereign immunity protections, as set forth in section 768.28.  As a result, Deputies Kinney and Campolo are shielded from personal liability.  In summary, Mr. Pinto has not shown a genuine issue of material fact, and summary judgment in favor of Deputies Kinney and Campolo and Sheriff Rambosk is warranted.

**<u>Third Cause of Action</u>: Florida False Imprisonment Against Deputies Kinney and Campolo in Their Individual Capacities and Sheriff Rambosk in his Official Capacity**

Similar to his false arrest claim, Pinto next alleges that Deputies Kinney's and Campolo's unlawful restraint of him constitutes false imprisonment.  (Doc. 119 ¶ 148.)  Under Florida law, "[t]he essential elements of a cause of action for false imprisonment include: (1) the unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or 'color of authority'; and (4) which is unreasonable and unwarranted under the circumstances."  <u>Mathis v. Coats</u>, 24 So. 3d 1284, 1289–90 (Fla. 2d DCA 2010) (citations omitted).  As with false arrest, probable cause is a "complete bar" to a false imprisonment action.  <u>Bolanos</u>, 677 So. 2d at 1005.

As discussed, Mr. Pinto's false imprisonment claim fails because there was probable cause for his arrest.  Further, the record evidence does not satisfy the standard set forth in section 768.28 to trump sovereign immunity protections, and Deputies Kinney and Campolo are shielded from liability in their individual capacities.  In short, Mr. Pinto has not established a genuine issue of material fact,

and judgment in Deputies Kinney and Campolo and Sheriff Rambosk's favor is warranted on this claim.

**Fourth Cause of Action: False Arrest Under Section 1983 Against Deputies Kinney and Campolo in Their Individual Capacities**

Mr. Pinto also alleges that Deputies Kinney's and Campolo's acts of "deliberately restrain[ing] him without legal authority and against his will by twisting his arms behind his back, handcuffing him and confining him to a jail cell" violated the Fourth Amendment. (Doc. 119 ¶¶ 160–61.) It is true that "[a]n arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010) (citations omitted). While it is undisputed that Mr. Pinto was detained when he was handcuffed and subsequently arrested, his false arrest claim under section 1983 nonetheless fails, as previously discussed, due to the presence of probable cause.[16] Even in the absence of probable cause, Mr. Pinto's claim fails because Deputies Kinney and Campolo are entitled to qualified immunity.

A defendant is entitled to qualified immunity as to a Fourth Amendment false arrest claim where there was "arguable probable cause" for the arrest. Davis

---

[16] To the extent Mr. Pinto contends he was unlawfully detained when Deputy Kinney initially pushed him and that the detention supports his false arrest claim, as noted, Mr. Pinto has not shown that he was "seized" for Fourth Amendment purposes. See Stephens v. DeGiovanni, 852 F.3d 1298, 1318–19 (11th Cir. 2017) (distinguishing between false arrest and unlawful seizure claims). In any event, Mr. Pinto has not shown that Deputy Kinney violated any clearly established right, and Deputy Kinney is entitled to qualified immunity.

v. Williams, 451 F.3d 759, 762 (11th Cir. 2006).  Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest the plaintiff."  Id. (internal quotation marks and citation omitted).  There was arguable probable cause that Mr. Pinto had committed at least battery.  In summary, Mr. Pinto has not established a genuine issue of material fact, and judgment in Deputies Kinney and Campolo's favor is warranted on this claim.

**Fifth Cause of Action: False Imprisonment Under Section 1983 Against Deputies Kinney and Campolo in Their Individual Capacities**

In support of this claim, Mr. Pinto alleges that Deputies Kinney and Campolo "violated the Fourth and Fourteenth Amendments . . . by . . . grabbing, seizing, handcuffing, arresting, detaining and imprisoning [him]."  (Doc. 119 ¶¶ 166.)  "A false imprisonment claim under § 1983 requires meeting the common law elements of false imprisonment and establishing that the imprisonment was a due process violation under the Fourteenth Amendment."  Helm v. Rainbow City, 989 F.3d 1265, 1278 (11th Cir. 2021) (citation omitted).  And "to establish a due process violation, a plaintiff must show that the officer acted with deliberate indifference."  Id. at 1278–79 (citation omitted).  The existence of "arguable probable cause to seize an individual . . . may defeat a claim of deliberate indifference."  Id. at 1279 (citation omitted).

Again, because Deputies Kinney and Campolo had arguable probable cause to seize Mr. Pinto, this false imprisonment claim fails.  Moreover, Mr. Pinto has not established that the duration of imprisonment—less than a day—was sufficient to

constitute a due process violation.  See Hendricks v. Sheriff, Collier Cnty., 492 F.

App'x 90, 91–92, 96 (11th Cir. 2012) (finding that "the relatively short detention [of

more than a day] did not amount to a denial of substantive due process").  In sum,

Mr. Pinto has not shown a genuine issue of material fact and summary judgment in

Deputies Kinney and Campolo's favor is warranted on this claim.

**Sixth Cause of Action: Florida Assault Against Deputies Kinney and Campolo in Their Individual Capacities and Sheriff Rambosk in His Official Capacity**

As the basis of his Florida assault claim, Mr. Pinto alleges that Deputy

Campolo "aggressively grabbed, twisted and contorted [Mr. Pinto's] other arm

behind his back, using said arm as the focal point to violently push and maneuver

[him] to another location, causing [him] to suffer substantial pain and injury to said

arm," and that Deputies "Kinney and Campolo both applied handcuffs to [his]

wrists while behind his back in an excessively tight fashion, causing [him] to endure

substantial pain and suffering."  (Doc. 119 ¶¶ 174–75.)

Florida law defines assault as "any intentional, unlawful offer of corporeal

injury to another by force, or force unlawfully directed toward the person of another,

under such circumstances as to create a well-founded fear of imminent peril,

coupled with the apparent present ability to effectuate the attempt if not

prevented."  Colony Ins. Co. v. Barnes, 189 F. App'x 941, 943 (11th Cir. 2006)

(citation and emphasis omitted).  Mr. Pinto's claim fails because he has not shown a

well-founded fear of violence or that the deputies acted unreasonably during his

arrest.

For example, Deputy Kinney's initial push occurred as Mr. Pinto was turning away from Mr. Buro, and Mr. Pinto did not testify that he saw the push coming or had time to develop a well-founded fear of violence.  Fernandez v. Est. of Gatti, No. 10-62269-CIV, 2012 WL 1193897, at *4 (S.D. Fla. Apr. 10, 2012) (granting summary judgment in defendant's favor where there was no evidence plaintiff saw defendant punch him).  Nor has he shown that he developed a well-founded fear as to tight handcuffing.  Likewise, uncontroverted video evidence demonstrates that, following the arrest, Deputy Kinney's push on Mr. Pinto's face was quick and could not be anticipated.

In any event, the claim fails because, as discussed below, the use of force was not unreasonable under the circumstances and did not constitute excessive force.  See Sullivan v. City of Pembroke Pines, 161 F. App'x 906, 911 (11th Cir. 2006) (upholding judgment in defendant's favor on Florida battery claim on the same grounds as section 1983 claim); Cutino v. Untch, 79 F. Supp. 3d 1305, 1315 (S.D. Fla. 2015) ("[T]o the extent [plaintiff] alleges that the Officers assaulted him during the same encounter, that claim is likewise foreclosed since any threat of force was reasonable.").  Even assuming Mr. Pinto's claim has merit, he has not shown that either deputy acted outside the course and scope of his employment or assaulted Mr. Pinto in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, such that the protections of section 768.28 are unavailable.  In sum, Mr. Pinto has not

established a genuine issue of material fact, and judgment in Deputies Kinney

and Campolo and Sheriff Rambosk's favor is warranted.

**Seventh Cause of Action: Florida Battery Against Deputies Kinney and Campolo in Their Individual Capacities and Sheriff Rambosk in His Official Capacity**

Mr. Pinto next alleges that the same conduct also constitutes battery.  (Doc.

119 ¶¶ 188–89.)  Florida defines battery as "the infliction of a harmful or offensive

contact upon another with the intent to cause such contact or the apprehension that

such contact is imminent."  Colony Ins. Co., 189 F. App'x at 943 (citation and

emphasis omitted).  To prevail, a plaintiff must prove "(1) the intent to cause a

harmful or offensive contact with another person; and (2) an offensive contact that

directly or indirectly results."  Rubio v. Lopez, 445 F. App'x 170, 175 (11th Cir.

2011) (citation omitted).  Mr. Pinto has not shown that, in a light most favorable to

him, record evidence supports a finding that Deputies Kinney or Campolo

committed battery.

Rather, as discussed below, Deputy Kinney did not use excessive force in

separating Mr. Pinto from Mr. Buro, and neither deputy used excessive force in

handcuffing and arresting Mr. Pinto.  See City of Miami v. Sanders, 672 So. 2d 46,

47 (Fla. 3d DCA 1996) (citations omitted) (noting that an officer is only liable for

battery where force used is "clearly excessive").  And Mr. Pinto has not shown that

the deputies acted outside the course and scope of their employment or touched Mr.

Pinto in bad faith or with malicious purpose or in a manner exhibiting wanton and

willful disregard of human rights, safety, or property, such that the sovereign

immunity protections of Fla. Stat. § 768.28(9)(a) are unavailable.  Accordingly, they

27

are not liable in their individual capacities.  In summary, Mr. Pinto has not established a genuine issue of material fact, and judgment in Deputies Kinney and Campolo and Sheriff Rambosk's favor is warranted on this claim.

**Eighth Cause of Action**: Excessive Force Under Section 1983 Against Deputies Kinney and Campolo in Their Individual Capacities

Mr. Pinto alleges that the same conduct also constitutes excessive force in violation of the Fourth and Fourteenth Amendments.[17]  (Doc. 119 ¶¶ 202–04.) Courts analyze such claims under the "objective reasonableness standard."  Boynton v. City of Tallahassee, 650 F. App'x 654, 660 (11th Cir. 2016) (citation omitted).  To decide whether the force used was reasonable, a court must examine "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted."  Id. (citation omitted). Further, the "amount of force used must be 'reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight.'"  Id. (internal quotation marks and citation omitted).  Here, Mr. Pinto has neither shown that Deputies Kinney nor Campolo used excessive force, and the deputies are nonetheless entitled to qualified immunity.

To begin with, Deputy Kinney did not use excessive force when he initially pushed Mr. Pinto.  Although Deputy Kinney had not observed any crime and the danger to the officer and the risk of flight was low, the use of force was minimal.

---

[17] Because Mr. Pinto's excessive force claim is not predicated solely on allegations that the deputies lacked the power to make an arrest, the claim is not subsumed within his false arrest claim.  See Bashir v. Rockdale Cnty., 445 F.3d 1323, 1332 (11th Cir. 2006).

Mr. Pinto only moved back "probably two feet, two and a half, two feet," and did not fall to the ground, leave his feet, or sustain any physical injury. (Doc. 145-2 at 43:6–21, 63:3–64:25.)

To be sure, the Eleventh Circuit has observed that the <u>de minimis</u> nature of an injury does not necessarily mean a defendant used <u>de minimis</u> force. <u>J.B. ex rel. Brown v. Amerson</u>, 519 F. App'x 613, 618 (11th Cir. 2013). But Deputy Kinney's use of force was nonetheless <u>de minimis</u> and, under the facts and circumstances presented here, not unreasonable. Indeed, by pushing Mr. Pinto away from Mr. Buro, Deputy Kinney was able to separate two individuals whom he had observed in an altercation. And although "even de minimis force will violate the Fourth Amendment if the officer is not entitled to arrest or detain the suspect," <u>Reese v. Herbert</u>, 527 F.3d 1253, 1272 (11th Cir. 2008) (citation omitted), as explained, Deputy Kinney did not "detain" Mr. Pinto by pushing him.

The same is true of Deputy Kinney's act of pushing Mr. Pinto's face toward the patrol car. Mr. Pinto disputes Deputy Kinney's assertion that he was attempting to maneuver Mr. Pinto's head so Mr. Pinto could enter the vehicle. (Doc. 159 at 8, ¶ 48.) In any event, the use of force was also <u>de minimis</u>. Further, at the time of arrest, probable cause existed as to battery or felony battery against a law enforcement officer. (Doc. 145-11.) And as Mr. Pinto exclaimed, "I am not resisting," he continued to face a crowd of vocal onlookers and was being searched. Courts have found no excessive force in similar circumstances. <u>See, e.g.</u>, <u>Chaney v. City of Orlando</u>, No. 6:04-cv-515-Orl-22KRS, 2007 WL 9719285, at *11 (M.D. Fla.

Aug. 15, 2007) (officer who slammed arrestee's head onto trunk to prevent communication with bystanders entitled to qualified immunity).

As for the deputies lifting Mr. Pinto's arms while handcuffing and escorting him, the Eleventh Circuit has found that such conduct does not constitute excessive force, and Mr. Pinto points to no circumstances that warrant a different outcome here.  See Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002) (officer "grabbed plaintiff's arm, twisted it around plaintiff's back, jerk[ed] it up high to the shoulder and then handcuffed plaintiff as plaintiff fell to his knees screaming that [the officer] was hurting him").  And although Mr. Pinto testified that the handcuffing "re-aggravated" a prior shoulder injury, and about "six months after," he visited a doctor, (Doc. 145-2 at 73:13–76:18), there is no indication that the deputies were aware of his shoulder condition.  See Rodriguez, 280 F.3d at 1352–53 (noting absence of evidence that officer knew handcuffing would aggravate preexisting condition).

The record evidence of tight handcuffing, which resulted in "numbness to [Mr. Pinto's] fingers that persisted for three (3) days, as well as swelling, redness and lacerations to his wrists," is also insufficient to support an excessive force claim.  (Doc. 119 ¶¶ 54, 55, 204.)  "Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal."  Rodriguez, 280 F.3d at 1351 (citations omitted).  Indeed, Mr. Pinto never sought medical treatment for his hands, and there is no evidence, even construing the facts in the light most favorable to Mr. Pinto, of a lasting injury.  (Doc. 145-2 at 80:15–81:2.)

Last, even if Deputies Kinney or Campolo did (somehow) violate Mr. Pinto's rights, Mr. Pinto has not shown that those rights were clearly established at the time of his arrest.  Accordingly, the deputies are entitled to qualified immunity as to this claim, and summary judgment in their favor is warranted.

**<u>Ninth Cause of Action</u>: Florida Malicious Prosecution Against All Defendants in Their Individual Capacities**

As the basis of this claim, Mr. Pinto alleges that Defendants were the legal cause of his criminal prosecution, "forwarded spurious information to prosecutors, caused false police reports to be filed or offered false statements that wrongly accused" him of the charged crimes, and "lacked probable cause to believe [he] was guilty or that the prosecution would succeed."  (Doc. 119 ¶¶ 208, 211.)

In Florida, a malicious prosecution claim requires: (1) an original judicial proceeding against the plaintiff; (2) the defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.  <u>Alamo Rent-A-Car, Inc. v. Mancusi</u>, 632 So. 2d 1352, 1355 (Fla. 1994) (citations omitted).  Because there was probable cause for the original proceeding, the claim fails as to all Defendants.[18]  Further, Mr. Pinto has not shown causation as to any defendant, except the arresting deputy, Kinney.

---

[18] Mr. Pinto contends that, as to Sheriff Rambosk, the "facts necessary to oppose [his] motion for summary judgment as to those claims alleged against him in his personal capacity are not available" due to a prior order which prevented Sheriff

At the time of the arrest, Deputies Campolo, Pisano, Dillman, Maholtz, and Byers observed Deputy Kinney attempt to handcuff Mr. Pinto and either helped control the crowd or assisted in handcuffing Mr. Pinto.  Despite his unsupported assertions to the contrary, Mr. Pinto has not shown that any defendant knew or should have known that their subsequent statements were false, or that any false

---

Rambosk's deposition.  (Doc. 161 at 10.)  Mr. Pinto further purports to move "pursuant to Rule 56(d) of the Federal Rules of Civil Procedure . . . to strike [the motion], as to those claims alleged against him in his personal capacity, or, in the alternative, to defer rendering a decision on [the motion], until" Mr. Pinto can depose Sheriff Rambosk.  (Id.)  However, Mr. Pinto's request suffers several flaws.

As the Eleventh Circuit has explained, "Rule 56 of the Federal Rules of Civil Procedure contemplates that a court may grant summary judgment without the parties having conducted discovery."  Edgewater House Condo. Ass'n v. City of Fort Lauderdale, 825 F. App'x 658, 664 (11th Cir. 2020) (internal quotation marks and citation omitted).  "If a summary judgment motion is filed before discovery, the party opposing summary judgment may move the court under Rule 56(d) to permit the discovery necessary to oppose the motion."  Id. (internal quotation marks, citation, and brackets omitted).  However, the movant must "specifically demonstrate how postponing the court's ruling would have enabled him, by discovery or other means, to rebut [the opposing party's] showing of the absence of a genuine issue of fact."  Id. (citation omitted).

Rather than move for his requested relief in a separate motion, Mr. Pinto's request is buried in his motion for summary judgment and response in opposition to a motion for summary judgment.  In any event, the prior order found that Sheriff Rambosk was "entitled to a protective order precluding his deposition at this time."  (Doc. 133 at 8 (emphasis added).)  Evidently, Mr. Pinto did not pursue the matter and did not object to the Magistrate Judge's non-dispositive pretrial order.  See Fed. R. Civ. P. 72(a).  And although Mr. Pinto requests deferral of a ruling on Sheriff Rambosk's motion, he filed his own cross-motion for summary judgment, the discovery deadline has elapsed, and Pinto has not moved to extend it.  (Doc. 136.)  In other words, Sheriff Rambosk's motion for summary judgment is not premature.  See Est. of Todashev by Shibly v. United States, 815 F. App'x 446, 450 (11th Cir. 2020) (noting that "Rule 56(d) provides shelter against a premature motion for summary judgment").  Last, he has not specifically demonstrated how postponing the ruling would enable him to rebut Sheriff Rambosk's showing of the absence of a genuine issue of fact. Accordingly, the request is denied.

statement was a determining factor in Deputy Kinney's decision to arrest and charge Mr. Pinto.[19]  (Doc. 160 at 22–24); see Orr v. Belk Lindsey Stores, Inc., 462 So. 2d 112, 114 (Fla. 5th DCA 1985) (noting that causation is satisfied where defendant provided information he knew or should have known was false and was determining factor in an arrest).  Further, Mulholland was a lieutenant who oversaw a district that did not include Mercato.  (Doc. 154-2 at 21:19–24, 28:21–29:2.)  And Ms. Thoman merely printed out documentation for the case and submitted it to the State Attorney's Office.  (Doc. 154-1 at 13:9–25.)  Sheriff Rambosk was likewise not involved in the decision to arrest or charge Mr. Pinto.  (Doc. 128-2 ¶¶ 3-7.)

Lastly, to the extent section 768.28 is available as to a Florida malicious prosecution claim, Defendants have not acted outside the course and scope of their employment, or acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.[20]  In

---

[19] For example, Mr. Pinto takes issue with the deputies' characterization of Mr. Pinto's contact with Deputy Kinney's chest.  However, even if Defendants' reports were fabricated, there is no evidence that any false statements were the determining factor leading to Mr. Pinto's arrest and prosecution.  Mr. Pinto further asserts that Deputy Byers "suppress[ed] evidence by failing to report, document or recover the surveillance recordings or the contents therein, in addition to failing to report the existence of a single favorable eyewitness for Mr. Pinto."  (Doc. 160 at 24.)  Again, there is no evidence that this purported "suppression" resulted in Mr. Pinto's arrest and prosecution, and allegations of an "imperfect criminal investigation" are insufficient. See Lee v. Geiger, 419 So. 2d 717, 719 (Fla. 1st DCA 1982).

[20] See Eiras v. Florida, 239 F. Supp. 3d 1331, 1346 (M.D. Fla. 2017) (noting that "[s]ome courts maintain that . . . if an officer acts with sufficient legal malice to fulfill the elements of a malicious prosecution claim, then he also acts with

short, summary judgment is warranted for all Defendants on this claim.

**Tenth Cause of Action: Malicious Prosecution Under Section 1983 Against All Defendants in Their Individual Capacities**

Mr. Pinto also raises a malicious prosecution claim under section 1983.  (Doc. 119 ¶¶ 218–28.)  To prevail, he must establish "a violation of [his] Fourth Amendment right to be free of unreasonable seizures" and "the elements of the common law tort of malicious prosecution." Paez v. Mulvey, 915 F.3d 1276, 1285 (11th Cir. 2019) (citation omitted).  The elements of common law malicious prosecution include that officers "instituted or continued" a criminal prosecution "with malice and without probable cause" that terminated in the plaintiff's favor and caused damage to him.  Id. (citation omitted); see also Williams v. Aguirre, 965 F.3d 1147, 1157 (11th Cir. 2020).  When defendants invoke qualified immunity, the issue is whether there was "arguable probable cause" for the arrest.[21]  Grider v. City of Auburn, 618 F.3d 1240, 1257-58 (11th Cir. 2010).  As noted, Mr. Pinto is unable to establish the elements of common law malicious prosecution, specifically the absence of probable cause as to all Defendants and causation as to all Defendants

---

sufficient malice to fall outside the protection afforded him by section 768.28(9)(a)" (internal quotation marks, citations, and brackets omitted)).  Notably, Florida malicious prosecution claims against state agencies or subdivisions are unavailable.  Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1330 (11th Cir. 2015).

[21] The "any-crime" rule does not apply to malicious prosecution claims under the Fourth Amendment.  Williams, 965 F.3d 1147 at 1162.  In any event, and as discussed, the undisputed facts establish arguable and actual probable cause as to each of the charged offenses.

except Deputy Kinney.  Further, because there was arguable probable cause,

Defendants are entitled to qualified immunity.

Alternatively, as the Eleventh Circuit instructs, "a plaintiff's warrantless

arrest cannot serve as the predicate deprivation of liberty because it occurred prior

to the time of arraignment, and was not one that arose from malicious prosecution

as opposed to false arrest." Abercrombie v. Beam, 728 F. App'x 918, 927 (11th Cir.

2018) (internal quotation marks and citation omitted).  Here, Mr. Pinto was

released from jail on bond with no additional conditions less than a day after his

arrest.  (Doc. 145-2 at 95:2–10, 96:14–18; Doc. 145-12.)  He points to no evidence

showing that he returned to custody during the ensuing prosecution or that any

judicial process was constitutionally infirm.  Accordingly, the malicious prosecution

claim fails, and judgment in all Defendants' favor is warranted on this claim. [22]

---

[22] As to the claim against Sheriff Rambosk in his individual capacity,
"supervisory officials are not liable under § 1983 for the unconstitutional acts of
their subordinates on the basis of respondeat superior or vicarious liability." Keith
v. DeKalb Cnty., 749 F.3d 1034, 1047–48 (11th Cir. 2014) (citation omitted).
Rather, a plaintiff must show that "the supervisor either directly participated in the
unconstitutional conduct or that a causal connection exists between the supervisor's
actions and the alleged constitutional violation." Id.  A plaintiff may establish a
causal connection by showing that: (1) "a history of widespread abuse puts the
responsible supervisor on notice of the need to correct the alleged deprivation and
he fail[ed] to do so"; (2) "the supervisor's improper custom or policy le[d] to
deliberate indifference to constitutional rights"; or (3) "facts support an inference
that the supervisor directed the subordinates to act unlawfully or knew that the
subordinates would act unlawfully and failed to stop them from doing so." Hendrix
v. Tucker, 535 F. App'x 803, 805 (11th Cir. 2013) (citation omitted).  Mr. Pinto has
failed to make such a showing as to any section 1983 claim.

35

**Eleventh Cause of Action**: Florida Abuse of Process Against All Defendants in Their Individual Capacity and Sheriff Rambosk in His Official Capacity

In support of his abuse of process claim, Mr. Pinto alleges that Defendants "submitted perjurious sworn statements and arrest reports with fabricated information against [him], or directed such acts to be committed, to incur favor or additional benefits from their <u>de facto</u> employers, Defendants SLR, [and Messrs.] Tallides and Buro and, also because [Mr. Pinto] was born in Brazil and is a male Hispanic or Latino."[23]  (Doc. 119 ¶ 233.)

In Florida, an abuse of process claim requires "(1) that the defendant made an illegal, improper, or perverted use of process; (2) that the defendant had ulterior motives or purposes in exercising such illegal, improper, or perverted use of process; and (3) that, as a result of such action on the part of the defendant, the plaintiff suffered damage."  <u>S & I Investments v. Payless Flea Mkt., Inc.</u>, 36 So. 3d 909, 917 (Fla. 4th DCA 2010).  "There is no abuse of process when the process is used to accomplish the result for which it was created, regardless of an incidental or concurrent motive of spite or ulterior purpose."  <u>Id.</u> (citation, emphasis, and brackets omitted).  Here, Mr. Pinto has not shown that Defendants made an illegal, improper, or perverted use of process.

The "process" underlying Mr. Pinto's claim is his criminal case.  (Doc. 119 ¶ 230.)  There is, however, no record evidence that any defendant acted after Mr. Pinto's prosecution was initiated for any purpose other than the result for which it

---

[23] Although Mr. Pinto purports to bring this claim against Ms. Thoman, he provides no factual allegations in support of the claim against her.  (Doc. 119 ¶¶ 229-38.)  As a result, the basis of the claim is unclear.

was created.  See Marty v. Gresh, 501 So. 2d 87, 90 (Fla. 1st DCA 1987).  To the extent Mr. Pinto relies on the absence of probable cause, as noted, there was probable cause for the arrest.  See, e.g., Burshan v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 805 So. 2d 835, 845 (Fla. 4th DCA 2001) ("Since [the defendant] had probable cause to pursue garnishment, as a matter of law, there could not have been an illegal, improper, or perverted use of process . . . .").  And even if the arrest or some charges lacked probable cause, or Deputy Kinney harbored an incidental or concurrent motive of spite or ulterior purpose, the claim fails.  See Novak v. Gray, No. 8:09-cv-880-T-26TGW, 2011 WL 13175899, at *1 (M.D. Fla. Jan. 14, 2011) ("The maliciousness or lack of foundation of the asserted cause of action itself is actually irrelevant to the tort of abuse of process." (citation and emphasis omitted)).

Furthermore, the record evidence does not satisfy the standard set forth in section 768.28, Florida Statutes, and sovereign immunity thus shields Defendants from liability in their individual capacities.[24]  In sum, Mr. Pinto has not established

_____

[24] As to the claim against Sheriff Rambosk in his official capacity, Sheriff Rambosk reasons that because a claim of abuse of process "requires evidence that the defendant made an illegal, improper, or perverted use of process and that the defendant had ulterior motives or purposes in exercising such illegal, improper, or perverted use of process, any such allegations sufficient to satisfy the elements of an Abuse of Process claim would necessarily entitle [Sheriff Rambosk] as the institutional defendant to immunity pursuant to Florida's waiver of sovereign immunity." (Doc. 153 at 20-21.)  The case he relies on, however, concerned malicious prosecution, which requires malice.  Sebring Util. Comm'n v. Sicher, 509 So. 2d 968, 970 (Fla. 2d DCA 1987).  In any event, absent a showing of abuse of process, summary judgment is warranted as to the claim against Sheriff Rambosk in his official capacity.

a genuine issue of material fact, and judgment in Defendants' favor is warranted on this claim.

**Twelfth Cause of Action: Abuse of Process Under Section 1983 Against All Defendants, Except Ms. Thoman, in Their Individual Capacities**

In addition to Florida law, Mr. Pinto purports to raise an abuse of process claim under section 1983. (Doc. 119 ¶¶ 239–45.) However, he does not specify an underlying violation of his constitutional rights. (Id.) Further, the Supreme Court of the United States and Eleventh Circuit have never recognized this cause of action. Jordan v. Mosley, 298 F. App'x 803, 805–06 (11th Cir. 2008). In any event, for the reasons discussed as to Mr. Pinto's abuse of process claim under Florida law, this claim lacks merit. And absent precedent holding that such a claim is actionable under section 1983, Defendants are entitled to qualified immunity. See Ratunuman v. Sanchez, No. 09-22937-CIV, 2010 WL 11602270, at *6 (S.D. Fla. May 5, 2010). In sum, there is no genuine issue of material fact, and Defendants are entitled to judgment as a matter of law.

**Thirteenth Cause of Action: Deprivation of Rights and Denial of Equal Protection Under Fla. Stat. §§ 760.07, 760.08 Against "CCSO Defendants" in Their Individual Capacities and Sheriff Rambosk in His Official Capacity**

In this claim, Mr. Pinto alleges he was arrested and charged because he is "a Hispanic or Latino male, who was born in Brazil." (Doc. 119 ¶ 247.) The equal protection clause of the Florida constitution and Florida Civil Rights Act (FCRA) prohibit a government actor from selectively enforcing the law based on race and national origin. See Fla. Stat. §§ 760.07, 760.08; Powell v. City of Sarasota, 953 So. 2d 5, 7 (Fla. 2d DCA 2006). As the Florida Supreme Court instructs, "to constitute

a denial of equal protection, the selective enforcement must be deliberately based on an unjustifiable or arbitrary classification," and the "mere failure to prosecute all offenders is no ground for a claim of a denial of equal protection." Bell v. State, 369 So. 2d 932, 934 (Fla. 1979) (citations omitted). Mr. Pinto's claim fails because, at bottom, he has not shown that he was arrested, charged, or prosecuted because of his race or national origin.

Notably, Mr. Pinto has not identified other similarly situated individuals outside his protected class who were engaged in the same conduct and were not arrested, and he has not shown that he was "singled out for prosecution." State v. Parrish, 567 So. 2d 461, 465 (Fla. 1st DCA 1990). For example, he does not identify other individuals at Mercato who made physical contact with a deputy and were not arrested. Nor has he shown that the government "followed unusual discretionary procedures in deciding to prosecute." Id. (citations omitted). And although Mr. Pinto testified that Deputy Kinney used a slur,[25] he cites no authority holding that a single comment, made after the plaintiff was in custody, supports a selective-

---

[25] Specifically, Mr. Pinto testified as follows:

> A: "[A]t the time when my head was up against the car and I asked one of the questions 'What the fuck is going on,' the word s--- was said, not Hispanic.
> Q: Do you know who said that?
> A: Mr. Kinney.
> Q: Any other slurs, ethnic slurs? Do you remember anyone else using any ethnic slurs?
> A: No, sir.

(Doc. 145-2 at 130:6–14.)

enforcement claim.  There was, nonetheless, probable cause for Deputy Kinney to arrest Mr. Pinto.

In any event, Mr. Pinto has not shown that Defendants acted outside the course and scope of their employment or "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  Fla. Stat. § 768.28(9)(a).  Accordingly, they are shielded from liability in their individual capacities.[26]  In summary, there are no genuine issues of material fact, and Defendants are entitled to judgment as a matter of law.

**Fourteenth Cause of Action: Deprivation of Rights and Denial of Equal Protection Under Sections 1981 and 1983 Against All Defendants, Except Ms. Thoman, in Their Individual Capacities**

Mr. Pinto also alleges that he was arrested and charged based on his national origin or race in violation of the Fourteenth Amendment's equal protection clause.  (Doc. 119 ¶¶ 264, 271.)  To prevail, Mr. Pinto must demonstrate that similarly situated individuals of a different race or national origin could have been, but were not, subjected to the same treatment.  Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1180 (11th Cir. 2009); see also Swint v. City of Wadley, 51 F.3d 988, 1000 (11th Cir. 1995).  Proof of discriminatory motive is required.  Busby, 931 F.2d at 777.  As noted, Mr. Pinto fails to identify any similarly situated individuals of a different race or national origin who could have been arrested but were not.  Likewise, he has not demonstrated a discriminatory motive.  Indeed, there was

---

[26] Alternatively, as to the FCRA claims, Mr. Pinto has failed to show that he exhausted his administrative remedies.  See Fla. Stat. § 760.11; McCullough v. Nesco Res. LLC, 760 F. App'x 642, 646 (11th Cir. 2019).

probable cause to support his arrest.  Absent a constitutional violation or genuine issue of material fact, Defendants are entitled to qualified immunity and judgment in their favor.[27]

**Fifteenth Cause of Action: Conspiracy to Interfere with Civil Rights Under Sections 1983 and 1985 Against All Defendants in Their Individual Capacities**

In support of his civil conspiracy claim, Mr. Pinto alleges that Defendants "engage[d] in verbal, written or electronic communications with one another, so that they could plan, coordinate and execute their conspiratorial designs to deprive [him] of his Constitutionally guaranteed civil rights, by virtue of each defendant agreeing to submit false allegations to prosecutors, fabricate inculpatory evidence and then collaborate to ensure the alignment of said false allegations and fabrications," and that these acts "were intended to wrongly inculpate [him], while simultaneously serving to shield Defendant Kinney from the potential ramifications that would normally result from his egregiously unlawful actions."  (Doc. 119 ¶ 275.)

A section 1983 claim for conspiracy to violate constitutional rights requires a showing that "a conspiracy existed that resulted in the actual denial of some underlying constitutional right," and that "the parties reached an understanding to deny the plaintiff his or her rights."  Grider, 618 F.3d at 1260 (internal quotation marks and citations omitted).  A claim under section 1985(3) requires: "(1) a

---

[27] Mr. Pinto's section 1981 claim similarly fails.  Section 1983 and 1981 discrimination claims effectively merge when the defendant is a state actor.  Busby, 931 F.2d at 771 n.6.  Even if analyzed separately, absent a showing that Mr. Pinto was arrested and charged because of his race or national origin, the claim fails.  Nor does the record evidence support a "class of one" equal protection claim.  See Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1201–02 (11th Cir. 2007).

conspiracy; (2) for the purpose of depriving . . . any person or class of persons of the equal protection of the laws . . . ; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Denney v. City of Albany, 247 F.3d 1172, 1190 (11th Cir. 2001) (citations omitted). Mr. Pinto's claims fail for several reasons.

First, Mr. Pinto has not shown an underlying violation of a constitutional right. Even assuming that his rights were violated, he has not shown that Defendants reached an understanding or agreement to violate those rights. He cites no record evidence reflecting such an agreement or understanding, and a "[p]laintiff cannot rely on subjective suspicions and unsupported speculation but must provide sufficient facts to show that an agreement was made." Oden v. Thomas, No. 2:13-cv-388-TMH, 2013 WL 5502963, at *2 (M.D. Ala. Sept. 30, 2013) (citation omitted); see also Fullman v. Graddick, 739 F.2d 553, 556-57, 561–64 (11th Cir. 1984) (rejecting vague and conclusory allegations suggesting a conspiracy). It is likewise insufficient that all Defendants were in some way involved in Mr. Pinto's criminal case.

At bottom, the record does not establish that Defendants spoke about or had an understanding as to violating Mr. Pinto's rights prior to Deputy Kinney intervening in the altercation between him and Mr. Buro, or that Defendants spoke about or had an understanding as to violating Mr. Pinto's rights during the arrest and subsequent prosecution. On the contrary, the record reflects Deputy Kinney

42

decided to arrest Mr. Pinto, and he prepared the booking sheet by himself. (Doc. 145-4 at 108:9–22, 112:23–113:16.)

Alternatively, Mr. Pinto's conspiracy claims fail because of the intracorporate conspiracy doctrine, which "holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000). "[U]nder the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." Id. "The doctrine applies to public entities such as the City and its personnel." Denney, 247 F.3d at 1190; see also Detris v. Coats, 523 F. App'x 612, 615 (11th Cir. 2013) (noting that the doctrine "prohibits a § 1983 claim against law enforcement officers in their individual capacities").

Here, because all Defendants were employees of the CCSO and working within the scope of their employment at the time Mr. Pinto's rights were purportedly violated, the intracorporate conspiracy doctrine defeats Mr. Pinto's conspiracy claim. See Grider, 618 F.3d at 1261-62 ("[T]he question of whether a defendant acted within the scope of his employment is distinct from whether the defendant acted unconstitutionally."). Further, Mr. Pinto has not shown that any exception applies. Id. at 1262. Accordingly, the absence of a constitutional violation or genuine issue of material fact entitles Defendants the protections of qualified immunity and therefore summary judgment is granted as to this claim too.

**<u>Sixteenth Cause of Action</u>: Failure to Intervene Under Section 1983 Against All Defendants, Except Sheriff Rambosk, in Their Individual Capacities**

To support his final claim, Mr. Pinto alleges that "[t]hose Defendants that were present, but did not actively participate in the aforementioned unlawful conduct, namely the aforementioned use of excessive force, observed such conduct, had an opportunity and the capability to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene," in violation of the Fourth and Fourteenth Amendments.  (Doc. 119 ¶ 280–82.)

An officer is liable under section 1983 for failing to intervene when a fellow officer uses excessive force if he is present at the scene and fails to take reasonable steps to protect the plaintiff.  <u>Militello v. Sheriff of Broward Sheriff's Off.</u>, 684 F. App'x 809, 813 (11th Cir. 2017) (citation omitted).  "This liability, however, only arises when the officer is in a position to intervene and fails to do so."  <u>Priester</u>, 208 F.3d at 924. (citation omitted).  Mr. Pinto's claim fails because he has not shown that any defendant used excessive force or that any defendant was in a position to intervene and failed to take reasonable steps to protect him.[28]

---

[28] To the extent Mr. Pinto claims that Defendants failed to intervene as to constitutional violations apart from the use of excessive force, Mr. Pinto cites no binding precedent recognizing such a theory of liability.  Even assuming such a cause of action is available, Defendants would be entitled to qualified immunity because Mr. Pinto has not shown that they violated his rights outside of the excessive force context and, as courts have observed, no United States Supreme Court, Eleventh Circuit, or Florida Supreme Court authority clearly established any such right.  <u>See, e.g.</u>, <u>Tarantino v. Citrus Cnty. Gov't</u>, No. 5:12-cv-434-Oc-32PRL, 2014 WL 4385550, at *14 (M.D. Fla. Sept. 4, 2014) (collecting cases).

As noted, Mr. Pinto has not shown that any defendant used excessive force during Mr. Pinto's arrest.  And even if excessive force was used, no defendant was in a position to intervene and failed to take reasonable steps to protect Mr. Pinto. First, as to Deputy Kinney, Mr. Pinto does not specify the act of force that Deputy Kinney was required to prevent.  Liability certainly cannot attach to his failure to prevent himself from using excessive force.  See Crutcher v. Vickers, No. CV-10-S-01176-NE, 2012 WL 3860557, at *10 (N.D. Ala. Sept. 5, 2012) ("[A] failure to intervene claim requires a minimum of two police officers: the officer who used excessive force, and the officer who failed to intervene.").  And because Mr. Buro was not a state actor, there was no constitutional violation that required intervention.  In any event, standing 10 to 15 feet away, Deputy Kinney was in no position to intervene in Mr. Buro's brief, isolated use of force.  See Marantes v. Miami-Dade Cnty., 649 F. App'x 665, 672 (11th Cir. 2016) (holding that because the excessive force happened in such "rapid succession without warning," it did not provide sufficient time for intervention).  Similarly, Mr. Pinto has not shown that Deputy Kinney was in a position to intervene in Deputy Campolo's use of force during his handcuffing.

As to the claim against Deputy Campolo, Mr. Pinto has also failed to show that Deputy Campolo was in a position to intervene in Deputy Kinney's purported use of excessive force.  Indeed, it would not have been possible for Deputy Campolo to anticipate Deputy Kinney's initial, brief push of Mr. Pinto.  And at the time, Deputy Campolo stood about 20 to 25 feet from Mr. Pinto and Deputy Kinney.

Similarly, Deputy Kinney's push against Mr. Pinto's face at the patrol car was isolated and brief.  Again, these acts did not feature the type of repeated or sustained force that could be stopped by intervention.

 Likewise, Deputies Pisano, Dillman, Maholtz, and Byers were not within range to intervene in any use of excessive force at Cavo Lounge and, upon arriving at Deputy Kinney and Mr. Pinto, focused on controlling the crowd.  Ms. Thoman and Lieutenant Mulholland were not on scene and were in no position to intervene.  See Militello, 684 F. App'x at 813 (noting absence of cases holding that "an officer was in a position to intervene against the use of excessive force where he or she was unable to observe a fellow officer's use of force").

In short, Mr. Pinto has not shown that Defendants violated his rights by failing to intervene or that the rights were clearly established.  Accordingly, Defendants are entitled to qualified immunity and judgment as a matter of law as to this claim.

## CONCLUSION

Defendants' motions for summary judgment are **GRANTED**.  (Docs. 145, 152, 153, 154.)  Mr. Pinto's cross-motions for summary judgment are **DENIED**.  (Docs. 159, 160, 161.)  Defendant Kinney's Motion to Strike Plaintiff's Expert Witness Disclosures and Opinions is **DENIED as moot**.  (Doc. 144.)  The Clerk is directed to enter judgment in favor of Defendants and against Mr. Pinto, to terminate any pending deadlines, and to close the file.  Defendant Sheriff Rambosk's Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11 remains pending.  (Doc. 169.)  Lastly, Plaintiff Pinto's Motion for Extension of Time is **GRANTED**.  (Doc. 162.)

**DONE AND ORDERED** this 4th day of August, 2021.

**JOHN L. BADALAMENTI**
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record