UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**FABIANO B. PINTO**,

 Plaintiff,

v.              2:19-cv-551-JLB-NPM

**KEVIN J. RAMBOSK, MATTHEW A. KINNEY,
JOSHUA CAMPOLO, ADAM J. DILLMAN,
STEVE MAHOLTZ, FRANK C. PISANO, JR.,
BECKI A. THOMAN, JAY MULHOLLAND,**
and **JAMES BYERS,**

 Defendants.

---

### REPORT AND RECOMMENDATION

 Defendants Sheriff Kevin J. Rambosk, Collier County deputies Joshua Campolo, Adam J. Dillman, Steve Maholtz, and Frank C. Pisano, Jr., as well as investigator Becki A. Thoman, lieutenant Jay Mulholland, and sergeant James Byers prevailed on all sixty-one federal and state law claims in this civil rights action. Subsequently, the court found defendants entitled to an award of fees under 42 U.S.C. § 1988 as to twenty-three of the counts plaintiff Fabiano B. Pinto brought against them. (Doc. 208). Because the parties were unable to resolve the amount of attorney's fees owed, the court requested they attend a settlement conference in hopes of reaching an agreement. (Docs. 212, 214). But the conference proved unfruitful. (Doc. 218). Defendants now move the court to determine the amount of

fees to be awarded. (Doc. 213). While Pinto opposed the award of fees based on his inability to pay, he failed to file a response to defendants' motion and the time to do so has expired.

In this instance, defendants seek a fee award in the amount of $22,887.09.[1] This amount is based on a *portion* of the 424 hours of attorney time billed at a rate of $193 per hour for partners Christy M. Imparato and Richard A. Giuffreda, and rates between $131 and $160 per hour for associate Gregory J. Jolly.

## I.  The Lodestar Analysis

Title 42 U.S.C. § 1988 provides that "[i]n any action or proceeding to enforce a provision of [Section 1983] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . .." 42 U.S.C. § 1988(b). A reasonable fee is one that is sufficient to induce a capable attorney to undertake the representation of a meritorious claim or defense, as the case may be. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). And the value of an attorney's services is calculated using a "lodestar" approach. *See Tec Serv., LLC v. Toscano*, No. 21-13715, 2022 WL 4137629, *3 (11th Cir. Sept. 13, 2022) (quoting *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)). The lodestar figure is the product of a two-step, fact-intensive and case-

---

[1] Pursuant to Rule 54(d), the defendants already filed bills for taxable costs (Docs. 177, 178), which were taxed against Pinto in September 2021. (Docs. 180, 181).

specific inquiry, asking: (1) what would a lawyer in this division assess a paying client per hour to provide representation comparable to the legal skill, expertise, and acumen supplied to the prevailing party in this particular case, and (2) how many hours would have been appropriate for the lawyer, practicing good billing judgment, to bill such a client for the claims or defenses entitled to an award? *See Perdue*, 559 U.S. at 551-553. "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis, or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). The court has "wide discretion in performing these calculations. . .." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). "In short, litigation is messy, and courts must deal with this untidiness in awarding fees." *Fox v. Vice*, 563 U.S. 826, 834 (2011).

### A.  Reasonable Rates

The party seeking attorney's fees "bears the burden of establishing that his requested rate is in line with prevailing market rates," and this requires more than just "the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299. The court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Mraz v. I.C. Sys.,*

*Inc.*, No. 2:18-cv-254-FtM-38NPM, 2021 WL 4086147, *5 (M.D. Fla. Aug. 23, 2021) (quoting *Norman*, 836 F.2d at 1303).

Defendants have failed to supply adequate information to confirm fair-market rates. *See Mraz*, 2021 WL 4086147 at *6 (noting that affidavits simply describing fees as reasonable do not offer any evidence about rates billed and paid in similar lawsuits and therefore provide no evidentiary support for an award). Notwithstanding, and informed by its own knowledge and experience, the court should find the rates billed in this matter reasonable based on the attorneys' biographies, the skill and talent displayed in this action, and the affidavits supplied by the defendants (for what they are worth). *Cf. McDonough v. City of Homestead*, No. 1:21-cv-21538-KMM, 2023 WL 6554338, *4 (S.D. Fla. Aug. 9, 2023), *report and recommendation adopted*, 2023 WL 6225038 (in a § 1983 case, awarding $219 per hour for attorneys with experience ranging from 3 to 23 years).

**B.    Reasonable Hours**

"Time spent is reasonable, and thus compensable, if it would be proper to charge the time to a client." *In re Home Depot Inc*., 931 F.3d 1065, 1087 (11th Cir. 2019). Since it is "the duty of the courts to see that excessive fees and expenses are not awarded," the fee applicant's timesheets must be viewed from the perspective of a cost-sensitive client, and if such a client would refuse to authorize the work or balk at certain entries, and justifiably so, then they should not be awarded. *ACLU of Ga.*

*v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). In other words, fee applicants must exercise "billing judgment" and exclude hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel.*" *Id.* (quoting *Norman*, 836 F.2d at 1301 (emphasis in original)). Upon an exhaustive review of the docket and timesheets, a substantial reduction to the amount requested is warranted, and an across-the-board cut is the appropriate methodology for arriving at a just award.

*First*, the court finds that a reduction is necessary to align defense counsel's hours with the court's order granting entitlement to fees. Here, defendants are entitled to a fee award by operation of 42 U.S.C. § 1988(b). Under that provision, a prevailing defendant is entitled to attorney's fees if the court finds that plaintiff's lawsuit was frivolous, unreasonable, or without foundation. *Hughes v. Rowe*, 449 U.S. 5, 14-15 (1980). Having examined each claim against each defendant, the court determined that a fraction of them were frivolous.[2] (Doc. 208 at 11). Defendants seek $22,887.09 in fees, which is a little more than one-third of the $61,857 they incurred. (Doc. 213 at 3 n.4). By defendants' math, twenty-three of the sixty-one theories of recovery were found frivolous, and so they request a recovery based on

---

[2] Specifically, the court found that defendants were entitled to a fee award as to all claims asserted against defendants Mulholland and Thoman and the § 1983 malicious-prosecution and abuse-of-process claims against all defendants. (Doc. 208 at 11).

this ratio (37%).[3] But that approach is not correct, because it "is improper to make [a] reduction based on a simple ratio of successful issues to issues raised." *Norman*, 836 F.2d at 1302 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 n.11 (1983); *Popham v. City of Kennesaw*, 820 F.2d 1570, 1579 (11th Cir. 1987)). Instead, when the defense has prevailed, the award should reflect only "reasonable attorney's fees incurred because of, but only because of, frivolous claim[s]." *Barnes v. Zaccari*, 592 F. App'x 859, 876 (11th Cir. 2015) (quoting *Fox*, 563 U.S. at 836).

In other words, "the dispositive question is not whether attorney costs at all relate to a non-frivolous claim, but whether the costs would have been incurred in the absence of the frivolous allegation." *Fox*, 563 U.S. at 838. And in this matter, nearly all the billed attorney time would have been expended in the absence of the frivolous claims. For example, the claims found frivolous only as to Mulholland and Thoman typically involved similar claims against co-defendants Campolo, Dillman, Maholtz, Pisano, Byers, and Rambosk. (*See* Doc. 119 at 31-40). And, "if the defendant[s] would have incurred those fees anyway, to defend against non-frivolous claims, then [the] court has no basis for transferring the expense to [Pinto]." *McDonough*, 2023 WL 6554338, at *6 (quoting *Fox*, 563 U.S. at 836).

---

[3] 23/61 = 37% and $61,857 x 37% = $22,887.09

Moreover, Thoman's involvement was limited to printing reports generated by CCSO deputies and submitting them to the State Attorney's office, while Mulholland—a CCSO lieutenant—had absolutely no involvement. Indeed, on summary judgment, the crux of defendants' argument was that the "record evidence established that [Mulholland and Thoman] took no action in relation to Plaintiff's arrest or prosecution" or violated his constitutional rights. (Doc. 154 at 6-7). Thus, in comparison to the other defendants, minimal attention, time, and legal expertise was required to defend Mulholland and Thoman.[4] At bottom, the claims brought against Mulholland and Thoman could only have had a slight impact on the overall defense, which never got past summary judgment. Such a marginal fraction of the suit simply cannot support the thousands of dollars defendants seek.[5]

The same is true for the malicious-prosecution and abuse-of-process claims advanced against the defendants collectively under § 1983. As alluded to in the court's fee-entitlement order, these claims should not have required more than a

---

[4] To further emphasize the point, the only motion written solely for the defense of Thoman and Mulholland was an eight-page summary judgment motion for which defendants' counsel billed 1.70 hours. (Doc. 154; Doc. 213 at 66). The only other motion referencing these defendants was a motion to dismiss (Doc. 60), which sought to dismiss the initial complaint filed in this matter as a shotgun pleading and argued that the claims against Mulholland should be dismissed with prejudice because the complaint was "completely devoid of any factual allegation that Mulholland actively participated in the events leading to Plaintiff's arrest." (*Id.* at 5).

[5] Notably, a review of the timesheets reveals that Pinto's counsel communicated with defense counsel about a stipulated dismissal of the claims against defendants Mulholland and Thoman. (Doc. 213-3 at 61-62). And from that point forward the defense should not be awarded any fees for work related to their defense.

minimal amount of time to successfully rebut. To be sure, defendants only devoted one paragraph to the malicious-prosecution count in a motion to dismiss. (Doc. 95 at 6). And in their summary judgment motions, they simply argued that the federal claim for malicious prosecution failed because the warrantless arrest could not serve as the predicate deprivation and there was probable cause for the prosecution. (Doc. 152 at 22-26). As to the federal abuse-of-process claim, defendants argued that it failed because it has never been recognized by the Supreme Court or courts in this jurisdiction. (*Id.* at 28).

*Second*, the hours sought by defendants are excessive. To illustrate this point, defense counsel billed an hour for requesting an extension of time to respond to the complaint (Doc. 213-1 at 3), and approximately one hour to file a one-page joint motion for leave to appear telephonically for a case management conference (*Id.* at 12). Seemingly more egregious, defense counsel billed for a motion to dismiss on behalf of Collier County (Doc. 59) and then two months later billed another three hours for filing a virtually identical motion directed to an amended complaint (Doc. 96). The court is not attempting to be a "green-eyeshade accountant[]" *Fox*, 563 U.S. at 838; rather, these examples illustrate a pattern found throughout the timesheets.

*Third*, the timesheets present other problematic issues. Take, for example, the repeated claims for roundtrip travel between Fort Lauderdale and Naples, which amount to almost thirty hours. While there may be no "hard and fast rule" regarding

8

travel time, *Martinez v. Hernando Cnty. Sheriff's Office*, 579 F. App'x 710, 713 (11th Cir. 2014), and a party may choose to hire out-of-town counsel, courts often reason that an opposing party should not be required to pay for this choice unless no local counsel could be found. *See, e.g.*, *Dish Network Serv. L.L.C. v. Myers*, 87 So. 3d 72, 78 (Fla. 2d DCA 2012) ("In Florida, the longstanding rule is that an award of attorneys' fees should not include travel time 'without proof that a competent local attorney could not be obtained.'"). No such proof was offered here. Defendants also claim a substantial number of hours—in excess of sixty—for reviewing the deputies' resumes, personnel files, and various investigations of alleged misconduct unrelated to this case, which includes several hours to review documents related to deputy Matthew Kinney even though he was represented by other counsel. (Doc. 213-3 at 18-25, 40-41, 50-52, 58). *See Jean v. Nelson*, 863 F.2d 759, 772 (11th Cir. 1988) (The court is obligated to "[prune] out those [hours] that are excessive, redundant, or otherwise unnecessary.").

## II.   Conclusion

Trial courts "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox*, 563 U.S. at 838. Indeed, the voluminous timesheets do not lend themselves to an hour-by-hour analysis, and an across-the-board reduction is the most appropriate method of setting the fee award. Reasoning that no more than 7% (and not defendants' proposed 37%)

of the billed hours are both compensable and attributable to the sliver of frivolous theories advanced in this case, the court should award $4,329.99. This reasonably accounts for the proper scope of the court's entitlement order and the reductions outlined above.[6]

Accordingly, the motion (Doc. 213) should be **granted in part**, and the court should direct the clerk to enter an amended judgment in favor of defendants in the amount of $4,329.99 for attorney's fees.

Recommended on February 7, 2024

NICHOLAS P. MIZELL
United States Magistrate Judge

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1. **The parties are firmly encouraged to meaningfully confer in good faith to narrow or resolve any objections to this report before the end of the fourteen-day objection period, and to file a notice of any agreed resolution of defendants' claim for fees.**

---

[6] Pinto is obviously in an unenviable position. He will now owe thousands of dollars in fees and costs for a scattershot approach to the prosecution of this action that was likely more the result of his counsel's choices than his. But Pinto "voluntarily chose [his] attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Link v. Wabash R. Co.*, 370 U.S. 626 (1962). The parties and their counsel are encouraged to continue to confer about an amicable resolution of this action to avoid any further expense for everyone involved.